OPINION.
A jury found appellant Robert C. Davis guilty of breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony, and rioting in violation of R.C. 2917.03(B), a first-degree misdemeanor. The trial court sentenced Davis to one year in prison on the felony count and to six months of local incarceration on the misdemeanor count.
On appeal, Davis raises four assignments of error, alleging that the trial court erred by (1) refusing to instruct the jury on a lesser-included offense; (2) refusing to instruct the jury on the appropriate procedure for deliberation; (3) allowing a conviction upon insufficient evidence; and (4) ordering restitution as part of the sentence.
 I. Discrepancies in the Verdict Form and the Sentencing Entry
We note that Davis was tried jointly with co-defendants Reno Lattimore and Darren Gamble. In this court's recent decision in Lattimore's direct appeal, we discussed certain discrepancies in the jury's verdict form and the sentencing entry. Because the same discrepancies occurred in Davis's case, we address them briefly here.
As we noted in State v. Lattimore,[1] the trial court correctly instructed the jury on the lesser-included offense of rioting, under R.C. 2917.03(A)(1), but the verdict form stated that the jury had found him guilty of rioting, under R.C. 2917.03(B). We stated that the evidence presented to the jury was consistent with the offense of rioting as defined in the (A)(1) subsection, but inconsistent with its definition under subsection (B). Furthermore, rioting was the least degree of the offense charged in the indictment aggravated rioting.[2] We held that the reference to the wrong statutory subsection did not void the jury s verdict because the jury had been adequately advised of its responsibility under R.C. 2917.03(A)(1). Furthermore, we concluded that the sentencing entry's citation to R.C. 2917.02(A)(1) was simply a clerical error. Therefore, as in Lattimore, supra, we remand this case to the trial court to correct the typographical error in its sentencing entry.
 II. Background Facts
On April 11, 2001, around eleven o'clock in the evening, Cincinnati Police Officer Donald Meece reported for duty. At the time, rioting had just begun to occur in his district of the city. Up to that point, rioting had been occurring that day in the city's Over-the-Rhine area. As a result, police officers carried riot shields and riot helmets. Some police units were equipped with beanbag shotguns and foam rounds in order to address the disturbances.
At approximately two o'clock in the morning, on April 12, 2001, Officers Meece and Mark Schildmeyer were dispatched to a Deveroes store in the Avondale area. As the officers approached the store, they saw several people going in and out of the store through its broken windows and doors. Officer Meece testified that, as he and Officer Schildmeyer neared the store, more people came out of the store, "out of the windows, any which they could get out and they were crawling over each other to get out because they had [been] alerted that we had been in the area and we were approaching the Deveroes store." The people outside the store were yelling warnings to those still inside the store that the police had arrived. He and Officer Schildmeyer called for backup assistance.
Some of the people leaving the store were carrying merchandise and were loading it into cars. As the police approached, those in the cars fled from the area. Officer Meece testified that he and Officer Schildmeyer did not run in immediately to arrest those who remained in the store because, with so many people there in the dark, it was too dangerous. Officer Meece estimated that twenty or twenty-five people had left the store as they approached.
Clothing, glass, garbage cans, and trash were strewn over the ground. The police eventually ran through the front doors of the store. There was no glass left in the doors, only the metal framing. The interior of the store was a mess — empty boxes on the floor, shelving overturned and trash dumped over the floor. Officer Schildmeyer testified that it looked like a tornado had just come through the store.
As the officers entered the store, Officer Schildmeyer saw Davis in the middle of the store. Officer Schildmeyer stopped Davis as he was trying to rapidly make his way to the door. The officer told Davis to get on the ground because he saw several people in the store run to a rear storage area. Davis did not comply with the officer's order, so after three or four more such orders, Officer Schildmeyer sprayed him with chemical Mace. Even after Officer Schildmeyer sprayed Davis with Mace, Davis did not obey his commands to get down on the ground, so the officer had to grab his shirt and pull him to the ground to get better control of him. Soon, Officers Jason Lobenthal and Jeff Smallwood arrived to assist.
Officer Lobenthal testified that he had been at the same Deveroes store earlier that same evening. At about 11:30 p.m., he and his partner had arrived to find forty or fifty people running from the store. The officers quickly checked the store, finding it to be "in complete disarray. The clothing racks were all knocked over. Clothing was all over, shoe boxes were empty and strewn all over." At that point, there was still merchandise in the store. The police officers stayed until Brian Edmonson, the store manager, arrived.
Officer Lobenthal told Edmonson that the officers would not be able to stay there all night to guard his store because they had so many other police calls to respond to. He also told Edmonson that it was not safe for him to stay by himself. The police waited while Edmonson quickly surveyed the damage to the store, and then the police and Edmonson left. Officers Lobenthal and Smallwood returned to the Devoroes store at about 2:00 a.m., when they received the call for assistance from Officers Meece and Schildmeyer.
Brian Edmondson testified that he had worked at the store earlier that day, and had had to close the store three hours early due to the looting. As he locked up the store at closing, he said, "The store was full with merchandise. Pretty much just an average closing operation day. Everything was fine."
Edmonson testified that, after receiving a telephone call from a store employee, he returned to the store at about midnight. When he arrived, Officers Lobenthal and Smallwood were already there. Edmonson estimated that, at that time, twenty-five to thirty percent of the store's merchandise had been stolen. The windows were not broken at that time. Edmonson was unable to secure the store at that point. The police officers suggested that, for his personal safety, Edmonson should leave the area.
At 7:30 the following morning, Edmonson went back to the store. By that point, over ninety percent of the merchandise had been stolen. He testified that the total inventory lost was worth approximately $131,000.
 III. Jury Instruction on Lesser-Included Offense of Disorderly Conduct
In his first assignment of error, Davis argues that the trial court erred by refusing to instruct the jury on disorderly conduct, a lesser-included offense of aggravated rioting. In co-defendant Lattimore's appeal, we agreed that disorderly conduct is a lesser-included offense of aggravated rioting.[3] But our analysis does not end there. Even though disorderly conduct is a lesser-included offense of aggravated rioting, an instruction on disorderly conduct is required only where the evidence at trial would reasonably support both an acquittal of the greater offense and a conviction on the lesser offense.[4] So we must determine in this case whether the evidence supported giving the instruction.[5]
Aggravated rioting is defined as participating with four or more persons in a course of disorderly conduct with the purpose to commit or facilitate a felony,[6] in this case, breaking and entering. Disorderly conduct is defined, in pertinent part, as recklessly causing inconvenience, annoyance, or alarm to another by threatening harm to persons or property or engaging in violent or turbulent behavior, or by "[c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."[7] The store manager testified that no one had permission to be in the Deveroes store at 2:00 a.m. When Officers Meece and Schildmeyer approached the store, they saw twenty to twenty-five looters fleeing with merchandise through broken doors and windows. The officers saw Davis in the middle of the darkened store, attempting to make a quick exit.
The facts of this case did not warrant an instruction on disorderly conduct. We cannot say that it was possible, under any reasonable view of the evidence, for the jury to have found Davis not guilty of the greater offense of aggravated rioting, but guilty of the lesser offense of disorderly conduct.[8] Therefore, we find no error in the trial court's refusal to instruct the jury on disorderly conduct as a lesser-included offense of aggravated rioting. We overrule Davis's first assignment of error.
 VI. Jury Instruction on Deliberations
In his second assignment of error, Davis argues that the trial court incorrectly instructed the jury on the procedure for deliberating on a lesser-included offense. The challenged instruction included the following:
 If, however, you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Breaking and Entering, your verdict must be not guilty of Breaking and Entering and you will then proceed with your deliberations and decide whether the State has proven beyond a reasonable doubt all of the essential elements of the lesser offense of Criminal Trespass.
 In State v. Mason,[9] the Supreme Court of Ohio considered a similar instruction. In that case, the trial court had instructed the jury,
 If you find the Defendant not guilty of Aggravated Murder, you will then continue with your deliberations and determine whether or not the State of Ohio proved beyond a reasonable doubt all the essential elements of the lesser crime of murder.
 The court concluded that such an instruction was not prejudicial because it was not an "acquittal first" instruction.[10]
In State v. Thomas, the Supreme Court of Ohio held that "acquittal first" instructions are invalid because they encroach "on the province of the jury to decide questions of fact and to arrive at a verdict based on all the evidence before it and all the various offenses on which it has been properly instructed."[11] The court upheld an instruction similar to that in the present case because the instruction did not "expressly require unanimous acquittal on the charged crime."[12] The court held that the instruction was not prejudicial to the defendant because it had "negligible coercive potential."[13]
Accordingly, we overrule Davis's second assignment of error.
 V. Sufficiency of the Evidence
In his third assignment of error, Davis argues that his convictions for breaking and entering and rioting were based upon insufficient evidence. We disagree.
As the Ohio Supreme Court has explained in State v. Thompkins,[14]
"sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[15]
The offense of breaking and entering occurs when a person, by force, stealth, or deception, trespasses in an unoccupied structure with the purpose to commit any theft offense as defined in R.C. 2913.01.[16]
Davis claims that the evidence failed to demonstrate that he had entered the Deveroes store by force, stealth, or deception.
Stealth has been defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a [structure] of another without permission."[17] In this case, when the police arrived at the store at 2:00 a.m., they saw people running out of the store with merchandise. Edmondson testified that no one had permission to be inside the store at that time. When the police entered the store, Davis was trying to make a quick exit. Although there was no testimony about how Davis had entered the store, the fact that he must have entered the darkened store after closing through its broken doors or windows was sufficient to support a finding that he had trespassed by stealth, and that he was there to commit a theft offense.
The offense of rioting occurs when a person participates with four or more others in a course of disorderly conduct with the purpose to commit or facilitate the commission of a misdemeanor other than disorderly conduct.[18] Davis argues that he "did nothing that would amount to disorderly conduct. The most he may have done, perhaps, was to be difficult or uncooperative when confronted by police."
The record demonstrates that, as police officers approached the store, twenty or more people were emerging with merchandise. When the police officers entered the store, several people ran to a rear storage area. In all, seven or eight people were apprehended in the store. The jury reasonably could have found that Davis was participating with the other looters, with the purpose to commit either theft or trespassing, as reflected by its guilty verdict on the breaking-and-entering charge.
Therefore, we overrule Davis's third assignment of error.
 VII. Restitution Order
In his fourth assignment of error, Davis argues that the trial court erred by ordering restitution as part of its sentence. Davis claims specifically that the error resulted from the court's failure to consider his financial circumstances.
Under R.C. 2929.18(A), a court may sentence a felony offender to a financial sanction, including restitution to the victim, in an amount based on the victim's economic loss. "Economic loss" means any economic detriment suffered by a victim, including any property loss incurred as the result of the commission of a felony.[19]
A financial sanction of restitution imposed under R.C. 2929.18(A) is a judgment in favor of the victim of the offender's criminal act.[20] The offender subject to the restitution sanction is the judgment debtor.[21]
Imposition of a financial sanction and execution on the judgment do not preclude the exercise of any other power of the court to impose or enforce sanctions on the offender.[22] Once the financial sanction of restitution is imposed as a judgment, the victim may bring an action to (1) obtain execution of the judgment through any available procedure,[23]
or (2) obtain an order for the assignment of wages of the judgment debtor.[24]
At sentencing, the court must determine the amount of restitution to be made by the offender.[25] Before imposing the financial sanction, the court must consider the offender's present and future ability to pay the sanction.[26] The court may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it.[27]
 In this case, the record demonstrates that the trial court properlydetermined the amount of restitution. The court considered theuncontroverted testimony of the Deveroes store manager that approximately$131,000 worth of merchandise had been lost. The court noted that thisamount did not include the business's clean-up costs. The court indicatedthat it had also considered the victim-impact statements in the case. Inone statement, Deveroes auditor Lamar Casey indicated that the store hadsustained damages of $167,757.36. Attached to his statement was apreliminary list of the store's losses, which indicated that $130,753.03was attributable solely to lost inventory.
 The record further demonstrates that the trial court considered Davis'spresent and future ability to pay the sanction. In thepresentence-investigation report, Davis indicated that he had completedhigh school and that he had additional training through Cincinnati BarberCollege. He said that he was a laborer, working for a blacktoppingcompany and earning $350 per job.
 In a letter to the court, Davis said that he had gained employment andwas nearing completion of his barber training. At sentencing, when thetrial court told Davis that he did not appear to be regularly employed,Davis countered, "Sir, my children are supported. I told you I workblacktop for my stepfather and I cut hair and do odd jobs." Davis'smother and fiancee wrote letters to the court on his behalf.
 While the trial court must consider the offender's ability to payrestitution, there are no express factors that must be taken intoconsideration, nor are there findings that must be made on the recordregarding the offender's ability to pay.[28] All that is required underR.C. 2929.19(B)(6) is that the trial court consider the offender'spresent or future ability to pay.[29] On appeal, a reviewing courtcannot modify a financial sanction unless it finds by clear andconvincing evidence that it is contrary to law.[30]
 We cannot say in this case that the trial court acted unreasonably,arbitrarily, or unconscionably by not holding a hearing on Davis'sability to pay restitution, in light of the court's consideration of thepresentence report and Davis's letter to the court.[31] Accordingly, wehold that the trial court did not abuse its discretion by not conductingsuch a hearing. We further hold that the court's restitution order wasnot contrary to law because the record demonstrates that the courtthoroughly considered Davis's present and future ability to pay.[32] Weoverrule Davis's fourth assignment of error.
 VIII. Conclusion
Accordingly, we affirm the trial court's judgment, but we remand this case with instructions that the court correct Davis's sentence to reflect his conviction for rioting under R.C. 2917.03(A)(1).
Judgment affirmed and cause remanded for correction of sentence.
Doan, P.J., and Gorman, J., concur.
[1] (Feb. 22, 2002), Hamilton App. No. C-010488, unreported.
[2] See Lattimore, supra, citing R.C. 2945.75(A)(2).
[3] See Lattimore, supra, citing Gorman, Mestemaker, and Perry, Anderson's Ohio Criminal Practice and Procedure (7 Ed. 2001), Table of Lesser Included Offenses, at 93 (disorderly conduct is likely a lesser-included offense of aggravated rioting).
[4] See State v. Davis (1983), 6 Ohio St.3d 91, 451 N.E.2d 772.
[5] See State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553, unreported.
[6] R.C. 2917.02(A)(1).
[7] See R.C. 2917.11(A)(1) and (5).
[8] See Lattimore, supra; Davis, supra, at 95, 451 N.E.2d at 776.
[9] (1998), 82 Ohio St.3d 144, 694 N.E.2d 932.
[10] Id. at 161, 694 N.E.2d at 776, citing State v. Allen (1995),73 Ohio St.3d 626, 638, 653 N.E.2d 675, 687; cf. State v. Thomas (1988),40 Ohio St.3d 213, 533 N.E.2d 286, paragraph three of syllabus.
[11] State v. Thomas (1988), 40 Ohio St.3d 213, 219, 533 N.E.2d 286,292.
[12] Id. at 220, 533 N.E.2d at 293, see, also, State v. Wright (Nov. 13, 2001), Franklin App. No. 00AP-985, unreported; State v. Overton (May 5, 2000), Lucas App. No. L-98-1410, unreported.
[13] Id.
[14] (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.
[15] See State v. Waddy (1991), 63 Ohio St.3d 424, 430, 588 N.E.2d 819,825, certiorari denied (1992), 506 U.S. 921, 113 S.Ct. 338; see, also,Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789.
[16] See R.C. 2911.13(A).
[17] See State v. Ward (1993), 85 Ohio App.3d 537, 540, 620 N.E.2d 168,170.
[18] R.C. 2917.03(A)(1).
[19] R.C. 2929.01(M).
[20] R.C. 2929.18(D).
[21] Id.
[22] Id.
[23] Id. These procedures include:
 (a) An execution against the property of the judgment debtor under Chapter 2329. of the Revised Code;
 (b) An execution against the person of the judgment debtor under Chapter 2331. of the Revised Code;
 (c) A proceeding in aid of execution under Chapter 2333. of the Revised Code, including:
 (i) A proceeding for the examination of the judgment debtor under sections 2333.09 to 2333.12 and sections 2333.15 to 2333.27 of the Revised Code;
 (ii) A proceeding for attachment of the person of the judgment debtor under section 2333.28 of the Revised Code;
 (iii) A creditor's suit under section 2333.01 of the Revised Code.
 (d) The attachment of the property of the judgment debtor under Chapter 2715. of the Revised Code;
 (e) The garnishment of the property of the judgment debtor under Chapter 2716. of the Revised Code.
[24] Id.; see, also, R.C. 1321.33.
[25] R.C. 2929.18(A)(1).
[26] R.C. 2929.19(B)(6).
[27] R.C. 2929.18(E).
[28] See State v. Martin (2000), 140 Ohio App.3d 326, 338,747 N.E.2d 318, 328.
[29] R.C. 2929.19(B)(6); State v. Karnes, supra; State v. Martin,
supra.
[30] See R.C. 2953.08(G)(2); State v. Kelly (Aug. 20, 2001), Butler App. No. CA-2000-05-075, unreported; State v. Blanton (Mar. 19, 2001), Butler App. No. CA99-11-202, unreported.
[31] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140,1142.
[32] See R.C. 2929.19(B)(6)